IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:17CR146 |
| vs. | |
| ALFORT HENRY, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the Court on Defendant Alfort Henry's ("Defendant") Motion to Suppress Evidence. (Filing No. 36.) Defendant seeks to suppress evidence obtained during the search of an apartment and vehicle on March 14, 2017, as well as statements made following the search.[1]

In addition to the filing of Motion to Suppress, Defendant filed an Application and Request for Franks v. Delaware Hearing. ("Franks hearing"). (Filing No. 39.) Upon receiving the government's response to the Motion and Application, the Court granted Defendant's request for a Franks hearing. (Filing No. 57.) A Franks hearing and an evidentiary hearing on the Motion to Suppress was held on December 19, 2017. No witnesses were called to testify at the hearing.

The transcript of the proceedings was filed on January 16, 2018. (Filing No. 70.) This matter is now fully submitted for disposition.

**BACKGROUND**

On March 8, 2017, the York Police Department received a phone call from Shaine Lyons ("Lyon"), reporting that Eva Bowers ("Bowers") had been raped. Officer Brit Koch ("Officer

---

[1] The government does not dispute that Defendant has standing to challenge the search of the apartment.

Koch") proceeded to trailer #4, at 1200 N. Platte Ave. in York, Nebraska to investigate. (Ex. 106.)

Officer Koch's report of the incident (Ex. 106) states that while at the trailer, he attempted to speak to Bowers, but she was crying uncontrollably and was only able to give short statements. Bowers stated she was raped and when Officer Koch asked her who raped her, she responded "the black guy, Henry." Bowers stated she was unsure where the rape occurred, but at one point she mumbled Del Ray Apartments. Bowers was unable to provide an apartment number. Officer Koch asked Bowers if anyone else was present during the rape. Initially, Bowers did not answer this question, but she later replied "Jennifer." Bowers also explained that she was placed in the shower at some point during the evening, and that she was not wearing her own clothes.

Bowers was drowsy during her conversation with Officer Koch and stated that she had been drugged. As Officer Koch was trying to speak to her, she was fading in and out of consciousness. Therefore, Officer Koch transported Bowers to York General Hospital, where she was examined by Physician Assistant, Trevor Hansen ("Hansen"). Bowers was barely responsive to Hansen. (Ex. 106.)

Officer Koch's report of the March 8, 2017 incident (Ex. 106) also notes that the York Police Department had interacted with Bowers and Justine Fowler ("Fowler") on a couple of occasions that evening. In the first instance, Officer Koch found Lyon, Bowers, Jennifer Smith ("Smith"), and Defendant in a van parked near Harrison Park. Lyon was arrested on an active warrant, and Bowers stated that she wanted to leave with Defendant and Smith. Officer Koch believed that Bowers was under the influence of narcotics at that time.

According to Officer Koch's report, shortly after they left Harrison Park, officers were called to Smith's apartment, at Del Ray Plaza, #13.[2] Officers Headlee and Cass investigated that incident. Smith reported that Bowers had caused a disturbance and left the apartment with

---

[2] The Court will note that Officer Koch's report contained Jennifer Smith's full name, date of birth, address, driver's license number, cell phone number, and residence phone number.

Defendant. Smith also stated that Defendant had made Bowers stand in the shower with her clothes on because he believed Bowers was wearing a wire.

On March 12, 2017, Officer Koch returned to the trailer to further investigate Bowers' sexual assault claim. (Ex. 104.) Bowers was transported to the York Police Department to provide a statement. During the interview, Bowers confirmed that Defendant and Smith were the same people with her in Harrison Park on March 8, 2017.[3] Bowers stated that after they left Harrison Park, Bowers and Smith took her to an apartment. Bowers felt that the apartment was located in the back corner of the Del Ray Apartment Complex. Bowers believed the apartment belonged to "Jennifer" because it was decorated like a female's apartment, but she did not know for certain.[4] Bowers reported that she was forced to shower with her clothes on while at the apartment because Jennifer and Defendant believed she was wearing a wire. Following the shower, Smith continued to give Bowers orders and told Bowers to strip off her clothes to show that she was not wearing a wire. Bowers stated she was given clothes to change into and then voluntarily left the apartment with Defendant.

Bowers reported that Defendant gave her Klonopin and two Ecstasy pills while on their way out of town. Once they were out of town and parked, she smoked a bowl of methamphetamine with Defendant. The sexual assault occurred in the car after they smoked the methamphetamine.

While Koch was interviewing Bowers, he determined the rape occurred outside the city limits and outside of his jurisdiction, so Koch contacted the York County Sheriff's Department. Sergeant Bruce Winn ("Sgt. Winn") of the York County Sheriff's Department then came to interview Bowers on March 12, 2017. Sgt. Winn's report indicates that Bowers was under the influence during the interview and was having a difficult time remembering the details of the night of the assault. (Ex. 105.) The report states that Bowers was having a hard time staying

---

[3] Officer Koch's report notes that Bowers referred to Defendant as "Fila," and that Bowers referred to Smith as "Jennifer" because she did not know Smith's last name. (Ex. 104.)

[4] Officer Koch's report of the March 12, 2017 interview (Ex. 104) notes that the York Police Department have had numerous contacts with Jennifer Smith at her apartment, #13, which is located in the back corner of the Del Ray Apartment Complex.

focused and seemed very unsure about timelines, locations and details of the assault. Bowers told Sgt. Winn that she was with Defendant and a woman named "Jennifer Smith," and that she had gone to Smith's house located at "2220 N. Nebraska Ave #13," and was forced to take a shower with her clothes on and strip.[5] (Ex. 105.) She also stated that Defendant had given her Ecstasy and that she had taken Clonopin earlier. She also reported smoking methamphetamine with Defendant.

On March 13, 2017, York County Sheriff's Deputy Paul Vrbka ("Deputy Vrbka") applied for a search warrant, and the warrant listed the address to be searched as a "residence, located 2220 apt. #13 York, Nebraska." (Ex. 1.) The warrant also authorized the search of a white Dodge Avenger. The warrant indicates that the residence and vehicle were under the control or custody of "Jennifer L. Smith." The warrant was directed at obtaining illegal drugs, methamphetamine and drug paraphernalia, including smoking pipes, small plastic bags, cash, digital measuring scales and drug ledgers.

Deputy Vrbka's affidavit offered in support of the issuance of the warrant states that Bowers had reported that "Alfort F. Henry" assaulted her. The affidavit states that Bowers told Sgt. Winn that she was with "Alfort Henry and a female named Jennifer Smith at her residence located at 2220 N. Nebraska [A]ve apt. #13 in York, Nebraska on March 7, 2017." (Ex. 1.) The affidavit further states that "Jennifer Smith" forced Bowers to take a shower with her clothes on to check to see if she was wearing a wire, and that Smith made Bowers take off her clothes to check for recording devices. The affidavit notes that Bowers advised that she was under the influence of Klonopin during the incident. (Ex. 1.) The affidavit explains that Bowers left the apartment with Defendant. The affidavit states that Bowers smoked a bowl of methamphetamine with Defendant and that Defendant had given her Ecstasy pills. The affidavit further states that a case worker was currently working on an alleged child abuse case involving Jennifer Smith. In that investigation, one of Smith's children, a three year old, tested positive for methamphetamine in a hair follicle test. The case worker advised that she was having problems contacting Smith

---

[5] Notably, in closing arguments at the hearing, the government's counsel indicated that Bowers did not know Smith's address. (TR. 19-20.)

and Smith was avoiding her. The affidavit notes that Defendant is a convicted felon and has numerous drug arrests and convictions.

A warrant for a search of the residence and vehicle was issued on March 13, 2017. (Ex. 1.) The warrant was executed on March 14, 2017. The inventory of the search states the following items were found in the residence: "66g or 2.32 ounces of methamphetamine, [t]wo small baggies of marijuana one 8.3g one 4.7g, [t]wo laptop computers, 11 cell phones, two USB flash drives, Nebraska state IDs for Alfort F. Henry (11-2-1965) and Jennifer L. Smith (05-13-1983), [t]wo digital scales, [m]iscellaneous pills, rolling papers, baggies, torch, 4 pipes, 2 needles, 1 glass tube with white residue." (Ex. 1.) A warrant for a search of the phones, laptops and USB drives found during the search of the apartment was issued on March 14, 2017. (Ex. 2.) The warrant for those items was executed on March 15, 2017.

## DISCUSSION

### 1. Franks Challenge

Defendant argues that law enforcement violated *Franks v. Delaware*, 438 U.S. 154 (1978) because Deputy Vrbka's affidavit contained false and misleading statements, as well as material omissions. In particular, Defendant complains that the issuing judge should have been informed that Bowers could not provide Smith's last name or address, and had a difficult time remembering details. Additionally, Defendant contends that the judge should have been informed that officers had been called to the apartment on the night of the alleged rape, which was five days before the warrant was issued. Defendant contends this information is material because the officers did not observe criminal behavior at that time, and that this information casts doubt upon the statement that Smith was avoiding authorities.

To succeed on his *Franks* claim, Defendant must show that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included in the affidavit, and that the affidavit's remaining content is insufficient to establish probable cause. *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995). In determining if an affiant's statements

5

were made with reckless disregard for the truth, the test "is not simply whether the affiant acknowledged that what he [or she] reported was true." *United States v. Schmitz,* 181 F.3d 981, 986-87 (8th Cir. 1999) (quotation omitted).  Rather, courts ask whether, when looking at all the evidence, "the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." *Id*.  See also *United States v. Conant,* 799 F.3d 1195, 1200 (8th Cir. 2015).

Likewise, with respect to omissions of fact, Defendant must show that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.  *Gladney,* 48 F.3d 309 at 313 (citation omitted).  "The failure to include information and a reckless disregard for its consequences may be inferred from the fact that the information was omitted, although the defendant must show that the omitted material would be 'clearly critical' to the finding of [probable] cause." *Id*. at 313-14 (internal quotation omitted).

In this case, there is no indication that any false statement was intentionally, or with reckless disregard for the truth, included in the affidavit.  There is also no evidence suggesting that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading.  Defendant asserts the affidavit contains a false statement because it states that Bowers provided Smith's address.  However, the Court does not find that this statement is false or was made with reckless disregard for the truth.  The affidavit states that Bowers told Sgt. Winn that she was with Defendant and Jennifer Smith at her residence located at 2220 N. Nebraska Ave., Apt. #13.  (Ex. 1.)  According to Sgt. Winn's report, this is precisely what Bowers told him.  (Ex. 105.)  The Court has no evidence that shows that Bowers did not tell Sgt. Winn this information or that Deputy Vrbka, the affiant, had reason to doubt the accuracy of this information.  As noted above, no witnesses testified at the hearing.

Defendant contends that the statement in the affidavit that Bowers provided Smith's address is contradictory to information that Bowers provided to Officer Koch on March 8, 2017, because, at that time, Bowers was unable to provide a full name or apartment number.  However, Sgt. Winn interviewed Bowers several days later.  It is possible that Bowers remembered those

6

details later. Moreover, adding information from Officer Koch's report would not invalidate the information contained in the warrant. Rather, it would simply explain that officers knew Smith's address because they were called there on March 7, 2017, shortly after finding Defendant, Smith, and Bowers together near Harrison Park. The affidavit is unclear as to how Smith's address was obtained. However, this lack of clarity does not necessarily lead to the conclusion that Deputy Vrbka intentionally or recklessly made a false or misleading statement, or that he purposely or recklessly omitted information.

Moreover, contrary to Defendant's contention, the affidavit does not attempt to hide that Smith was under the influence of narcotics or may have had trouble remembering details. The affidavit clearly states that Bowers told Sgt. Winn that she was under the influence of Klonopin when she was forced to take a shower and checked for recording devices. The affidavit also explains that Bowers had smoked methamphetamine and taken Ecstasy pills. The affidavit further states that Bowers could not remember certain details of the sexual assault due to the drugs she had taken, and could not recall how she had gotten back into town after the sexual assault.

Additionally, the absence of information regarding the officers' visit to the apartment does not lead to the conclusion that the affidavit contained false statements or material omissions. Officer Koch's report indicates that suspicious activity was occurring at the apartment when officers responded. The report notes that Smith reported that Defendant had made Bowers take a shower with her clothes on because Defendant thought she was wearing a wire. If this information had been provided in the affidavit, it would have only strengthened the grounds for the warrant. Additionally, the affidavit states that the case worker believed Smith was avoiding *her*, not that Smith was avoiding all authorities. (Ex. 1.) Therefore, Defendant's contention that the lack of information pertaining to law enforcement's visit to the apartment was a material omission or intended to mislead the issuing judge is without merit.

Deputy Vrbka's affidavit did not contain deliberately false statements or statements made with reckless disregard for the truth, nor did the affidavit omit material information. Therefore, no *Franks* violation occurred in this case.

### 2. Probable Cause & Leon Good Faith Exception

"The Fourth Amendment requires a showing of probable cause before a search warrant may be issued." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999) (internal quotation omitted). "Courts should apply a common-sense approach and, considering all the relevant circumstances, determine whether probable cause exists." *United States v. Buchanan*, 167 F.3d 1207, 1211 (8th Cir. 1999).

Having examined the evidence presented, the Court concludes that there was probable cause for issuance of the warrant. Considering all relevant circumstances, there was a fair probability that evidence of a crime would be found in the apartment and vehicle.[6] Although the warrant did not include the street name in the address, courts may construe a warrant with reference to a supporting application or affidavit. *See Goh v. Ramirez*, 540 U.S. 551 (2003). Here, the affidavit, which included the street name was attached to, and made part of, the warrant by reference. Thus, the warrant described the place to be searched with sufficient particularity.

There was also a sufficient nexus between the drug contraband and the apartment to support issuance of the warrant. *See United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) ("[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue"). Law enforcement had information that Bowers was required to shower and strip in Smith's apartment due to fears she was wearing a wire. Officers were also aware that Defendant had prior drug convictions, and that Smith's 3 year-old child had recently tested positive for methamphetamine in a hair follicle test. Although Bowers did not indicate that drugs were used in the apartment, the fact that Bowers and Defendant did not make

---

[6] Defendant also challenges the warrant as it applies to the search of the vehicle. Defendant has the "burden of proving he had a legitimate expectation of privacy that was violated by the challenged search and seizure." *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991). "To establish a legitimate expectation of privacy, the defendant must demonstrate (1) a subjective expectation of privacy; and (2) that the subjective expectation is one that society is prepared to recognize as objectively reasonable." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995). "[T]he defendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy." *Id.* Defendant has not presented any such evidence. Moreover, it does not appear from the record that any evidence was actually located in the vehicle.

any stops between the apartment and smoking methamphetamine supports the conclusion that there was a nexus between the drugs and the places that were searched.

Additionally, contrary to Defendant's assertion, the information contained in the affidavit was not stale. As explained by the Eighth Circuit Court of Appeals:

> Probable cause must exist when a warrant is issued, not merely at some earlier time, but there is no bright-line test for determining when information is stale . . . Furthermore, time factors must be examined in the context of a specific case and the nature of the crime under investigation . . . Where continuing criminal activity is suspected, the passage of time is less significant . . . In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale.

*United States v. Morrison*, 594 F.3d 626, 631 (8th Cir. 2010) (internal citations and quotations omitted). Here, the subject of the investigation was possession of narcotics and drug contraband. The information regarding the hair follicle test was not stale because the affidavit indicated that there was a current, ongoing investigation of child abuse concerning Smith's children. The case worker was concerned that Smith was using methamphetamine with her children in the apartment. In addition, Bowers was put in the shower by Smith and/or Defendant to determine if she was wearing a wire and drugs were given to Bowers after leaving the apartment. In all likelihood, drugs were still in the apartment five days later when the warrant was requested. Thus, probable cause existed for issuance of the warrant.

Still, even if a search warrant is deemed invalid for lack of probable cause, evidence obtained pursuant to the warrant is not automatically suppressed. In *United States v. Leon*, 468 U.S. 897, 922-23 (1984), the United States Supreme Court concluded that evidence obtained pursuant to a search warrant should not be suppressed when the officers who executed the warrant reasonably relied in good faith on the magistrate's determination of probable cause. *Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient"). However, this good faith exception is inapplicable where (1) the issuing judge was misled by information in an affidavit that the affiant knew was false or made in

reckless disregard of the truth; (2) the issuing judge abandoned his or her judicial role; (3) the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant is so facially deficient that no executing officer could reasonably presume it to be valid. *Id.* at 923.

Assuming that probable cause did not support the issuance of the search warrant, the Court concludes that the *Leon* exception applies because the officer's reliance on the judge's determination of probable cause was "objectively reasonable." See *Leon*, 468 U.S. at 926. In assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, "it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." See *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990) (citations omitted). Nothing in the record leads the Court to believe that a "reasonably well trained officer would have known that the search was illegal." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008).

As found above, no *Franks* violation resulted from false or misleading statements, nor is there any indication that material information was intentionally or recklessly omitted from the affidavit. Moreover, there is no evidence that the issuing judge abandoned her judicial role or acted anything other than in a neutral capacity when evaluating whether the warrant should issue. Also, it was not unreasonable for the officers to believe that the search warrant was supported by probable cause, as the issuing judge concluded that the affidavit provided sufficient probable cause for the warrant. Finally, no evidence suggests that the warrant was facially deficient. For these reasons, the Court concludes that the officers relied in good faith on the warrant. Thus, the evidence and subsequent statements should not be suppressed.[7]

---

[7] During the execution of the initial search warrant, law enforcement seized certain electronic devices. Following the seizure of these items, law enforcement obtained a warrant to search/review the contents of the devices. Defendant contends that the evidence obtained from the search of the electronic devices should be suppressed as "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). However, because no Fourth Amendment violations have been found, the argument that the evidence found on the electronic devices should be excluded as fruits of an unlawful search fails. Moreover, Defendant has not shown that the seized electronic devices belong to him, or that he has any expectation of privacy in these items. See *Muhammad*, 58 F.3d at 355 ("[T]he defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search.")

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress Evidence be denied ([Filing No. 36](#)).

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 15th day of February, 2018.

BY THE COURT:

S/ Susan M. Bazis
United States Magistrate Judge