# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:17CR146 |
| vs. | MEMORANDUM AND ORDER |
| ALFORT HENRY, | |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 71, issued by Magistrate Judge Susan M. Bazis recommending that the Motion to Suppress filed by the Defendant Alfort Henry (Defendant), ECF No. 36, be denied. Defendant filed Objections to the Findings and Recommendation, ECF No. 72, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government has not responded to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, the Objections will be overruled, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. Indictment, ECF No. 1. Defendant moves to suppress the evidence seized during the search of Jennifer Smith's apartment[1] on March 14, 2017, on the grounds that the application supporting the warrant was insufficient to support a finding of probable

---

[1] The Government concedes that Defendant had standing to challenge the search of Smith's apartment. ECF No. 52, Page ID 104.

cause. Defendant also requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), asserting that officers provided improper information or omitted key information in their application for the search warrant.

Although Defendant broadly objects to the factual findings as "not supported by the record," Objection at 1, ECF No. 72, Page ID 184, and objects to the Magistrate Judge's characterization of some of the facts, Defendant does not specifically identify the objectionable portions of the factual findings. Accordingly, except as noted below, the Court adopts the findings in their entirety. The Court provides the following by way of summary:

On March 8, 2017, Officer Brit Koch of the York Police Department found Defendant, Shaine Lyon, Eva Bowers, Justine Fowler, and Jennifer Smith in a van parked near Harrison Park in York, Nebraska. Lyon was arrested on an active warrant. Bowers asked to leave with Defendant and Smith. Officer Koch believed that Bowers was under the influence of narcotics at that time.

Shortly after Defendant, Bowers, and Smith left Harrison Park, officers were called to Smith's apartment at the Del Ray Plaza Apartments in York. Smith reported that Bowers had caused a disturbance and left the apartment with Defendant. Smith also stated that Defendant had made Bowers stand in the shower with her clothes on because Defendant believed Bowers was wearing a wire. Smith told officers that Defendant believed the water from the shower would destroy any electronics.

Later that evening, Bowers reported to the York Police Department that Defendant sexually assaulted her. Soon after the report, Officer Koch interviewed Bowers. Bowers was emotional, drowsy, and appeared intoxicated during the interview,

but managed to disclose that she was unsure where the assault took place, though she mentioned the "Del Ray Apartments" and indicated that a woman named "Jennifer" may have been present. ECF No. 38-6, Page ID 83. Bowers indicated that she may have been drugged.

On March 12, 2017, Officer Koch brought Bowers to the York Police Department to provide a statement. During the interview, Bowers confirmed that Defendant and Smith were the same people with her in Harrison Park on March 8, 2017. Bowers stated that after they left Harrison Park, Bowers and Smith took her to an apartment located in the back corner of the Del Ray Apartments complex. Bowers believed the apartment belonged to "Jennifer." Bowers reported that she was forced to shower with her clothes on while at the apartment because Jennifer and Defendant believed she was wearing a wire. After the shower, Smith told Bowers to strip off her clothes to prove that she was not wearing a wire. Bowers stated she was given clothes to change into and then voluntarily left the apartment with Defendant. Bowers reported that Defendant gave her Klonopin and two Ecstasy pills while driving outside of York. Once outside the city, she and Defendant smoked a bowl of methamphetamine. The sexual assault allegedly occurred in the car after they smoked the methamphetamine.

Because the alleged assault took place outside of York, Officer Koch turned over the investigation to Sergeant Bruce Winn of the York County Sheriff's Department. Sgt. Winn continued the interview with Bowers on March 12, 2017. Sgt. Winn reported that although Bowers had a difficult time remembering timelines and details, she repeated to Sgt. Winn that she was with Defendant and a woman named "Jennifer Smith," and that

she had gone to Smith's house located at "2220 N. Nebraska Ave #13." Bowers repeated her account of the night to Sgt. Winn.

On March 13, 2017, York County Sheriff's Deputy Paul Vrbka applied for a search warrant to search a "residence, located 2220 apt. #13 York, Nebraska." Ex. 1.[2] Deputy Vrbka also requested a warrant to search a white Dodge Avenger. The affidavit in support of the application stated that Bowers had reported that "Alfort F. Henry" assaulted her. The affidavit stated that Bowers told Sgt. Winn that she was with "Alfort Henry and a female named Jennifer Smith at her residence located at 2220 N. Nebraska [A]ve apt. #13 in York, Nebraska on March 7, 2017." Ex. 1. The affidavit contained Bowers's account of the evening, including that Smith forced her to take a shower to prove Bowers was not wearing a wire and that Bowers smoked a bowl of methamphetamine with Defendant.

The affidavit further stated that a case worker was currently working on a case of alleged child abuse involving Jennifer Smith. In that investigation, one of Smith's children, a three-year-old, tested positive for methamphetamine in a hair follicle test. The affidavit also stated that Defendant was a convicted felon with numerous drug arrests and convictions.

A warrant for a search of Smith's residence and the vehicle was issued on March 13, 2017. The warrant indicated that the residence and vehicle were under the control or custody of "Jennifer L. Smith." Ex. 1. The stated purpose of the warrant was to obtain illegal drugs such as methamphetamine and drug paraphernalia, including smoking pipes, small plastic bags, cash, digital measuring scales, and drug ledgers. The warrant

---

[2] Exhibit numbers refer to exhibits offered and received at the evidentiary hearing, as reflected in the Exhibit List, ECF No. 59.

was executed on March 14, 2017. The inventory of the search stated that officers found 66 grams of methamphetamine, marijuana, two laptop computers, 11 cell phones, two USB flash drives, Nebraska state IDs for Defendant and Smith, two digital scales, pills, rolling papers, baggies, a torch, four pipes, two needles, and a glass tube with white residue. (Ex. 1.)

After the hearing on Defendant's Motion to Suppress, the Magistrate Judge concluded that the affidavit did not contain deliberately false statements nor did it omit material information. The Magistrate Judge further concluded that the warrant was supported by probable cause or was executed in good faith.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I. Truthfulness and Omissions in the Affidavit

Defendant has not demonstrated that the affidavit contained material omissions or falsehoods. Affidavits supporting a search warrant are presumed valid. *Franks v. Delaware,* 438 U.S. 154, 171 (1978). "Under *Franks,* a criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold,* 725 F.3d 896, 898 (8th Cir. 2013). To support

5

the request, the defendant must make "a substantial preliminary showing." *Franks,* 438 U.S. at 155. The defendant must demonstrate that the affidavit supporting the warrant "contained false statements or omissions that were material to the finding of probable cause," *United States v. Oleson,* 310 F.3d 1085, 1090 (8th Cir. 2002). "The type of showing required is not easily met." *United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir. 2002).

Defendant asserts that the affidavit contained material omissions and falsehoods because it omitted the fact that Bowers could not give a last name for "Jennifer" during her interviews; could not give an apartment number; had a difficult time remembering details; and was apparently "under the influence of something." ECF No. 38-5, Page ID 81. Defendant argues that these details would have affected the weight, credibility, and reliability of law enforcement's basis for knowing Smith's address and apartment number. Defendant also argues that the affidavit omitted details of a visit by law enforcement to Smith's address earlier on the evening of the assault, at Smith's request. Defendant does not specify why this fact was material.

These assertions do not demonstrate that the affidavit contained material falsehoods or omissions. Although there is no record of Bowers telling law enforcement Smith's exact address, Bowers repeatedly mentioned the name "Jennifer," referred to Jennifer's apartment, and stated that it was located in the back corner of the Del Rey Apartments complex. According to evidence introduced by Defendant, officers had encountered Bowers and Jennifer Smith at Smith's apartment earlier on the day of the alleged assault. See ECF No. 38-6, Page ID 83-84. Thus, there is evidence that officers independently knew Bowers had been with Smith; knew where Smith's apartment was located; and knew that Bowers had been there, consistent with Bowers's

6

account to law enforcement. There is no indication that this information would have had a negative impact on the probable cause determination. To the contrary, inclusion of this information would have corroborated Bowers's account. Accordingly, the Court adopts the Magistrate Judge's conclusion that the affidavit did not contain material omissions or falsehoods.

## II. Issuance of the Warrant

The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. Defendant argues that his Fourth Amendment rights were violated because the affidavit supporting the application for the search warrant failed to establish probable cause. He also contends that the good faith exception was not applicable to the search warrant and, as a result, the search was subject to the exclusionary rule.

### A. Probable Cause

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause" is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining whether probable cause exists, a court must look at the totality of the circumstances. *See id.* at 230, 234. This determination is to be "based upon a common-sense reading of the entire affidavit," *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir.1982)), and any "reasonable inferences" drawn from the affidavit. *United States v.*

*Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). The assessment of probable cause is made "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the . . . case." *Seidel*, 677 F.3d at 337 (citing *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001)).

"The Supreme Court has recognized that, because of the Constitution's 'strong preference for searches conducted pursuant to a warrant,' an issuing judge's determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Wright*, 145 F.3d 972, 974 (8th Cir. 1998) (quoting *Illinois v. Gates,* 462 U.S. 213, 236 (1983)); *see also United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009) (stating that whether a search warrant is supported by probable cause is determined by the totality of circumstances; resolution of the question by an issuing judge should be paid great deference by reviewing courts). "[T]he probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *Stults*, 575 F.3d at 843; *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006).

The affidavit contained sufficient information to support the issuing judge's probable cause determination. As noted above, the affidavit described the place to be searched with particularity. It also described Bowers's account to investigators that she was with Defendant at Smith's apartment and that, while there, Smith forced Bowers to take a shower and then searched Bowers to check for a wire. The affidavit also contains Bowers's allegations that, after leaving the apartment, Defendant gave Bowers Ecstasy pills and that the two smoked methamphetamine together. Given Smith's behavior at the apartment, the fact that Defendant and Bowers made no stops after leaving the

apartment, and information about Smith and Defendant's prior drug use, the issuing judge had sufficient information to support a finding of probable cause to search Smith's apartment.

Defendant argues that any information about drugs at Smith's apartment was stale because law enforcement sought the warrant five days after speaking with Bowers. "There is no bright-line test for determining when information in a warrant is stale." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017), *cert. denied,* No. 17-730, 2018 WL 1568037 (U.S. Apr. 2, 2018). "A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" *Id.* (quoting *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009)). "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily make the information stale, and a lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *Id.* (internal citations and quotations omitted).

The information contained in the affidavit was not stale at the time law enforcement requested the warrant. Officers requested a warrant five days after first interviewing Bowers. This was not an unreasonable amount of time given the nature of Bowers's response and the types of crimes at issue. The interval revealed Smith and Defendant's criminal histories related to drugs, and the ongoing investigation into Smith that included her daughter's hair follicles testing positive for methamphetamine.

9

Considering the totality of the circumstances, there was no indication that the information gathered from Bowers's interview became stale.

### B. *Leon* Good Faith Exception

Officers acted in good faith when executing the warrant and relying upon the issuing magistrate's determination. Even where probable cause is lacking, an exception to the exclusionary rule applies where officers rely on a warrant in good faith. *United States v. Hessman,* 369 F.3d 1016, 1019 (8th Cir. 2004). In *United States v. Leon,* 468 U.S. 897 (1984), the Supreme Court curtailed the use of the exclusionary rule as a remedy for unconstitutional searches, and noted that the stated purpose of the exclusionary rule is "to deter *police* misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916 (emphasis in original). Under the *Leon* good faith exception, "even if the affidavit does not set forth sufficient probable cause," evidence obtained from an invalid warrant "will not be excluded if: '(1) the executing officers relied in good faith on a search warrant signed by a neutral and detached magistrate, and (2) the officers' reliance on the warrant was objectively reasonable.'" *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (quoting *United States v. Jackson,* 67 F.3d 1359, 1365 (8th Cir.1995)).

The first element of the *Leon* good faith exception is met because the executing officers acted upon a warrant used by a neutral and detached magistrate. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon,* 468 U.S. at 920. The Eighth Circuit has explained

that "a judge abandons her judicial role when she 'does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer.'" *United States v. Long*, 797 F.3d 558, 567 (8th Cir. 2015) (quoting *United States v. Carpenter,* 341 F.3d 666, 670 (8th Cir. 2003)). Defendant makes no allegation that the issuing magistrate abandoned her neutral and detached role nor does he allege facts that would lead a reasonable person to believe her role was abandoned in issuing the warrants. Accordingly, the first element of the good faith exception is met.

The second element is also met because the officers' reliance on the warrant was objectively reasonable. "In evaluating a search under *Leon*, [courts] 'must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *Long*, 797 F.3d at 566 (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)). An officer's reliance is unreasonable if the affidavit supporting the warrant contained false or misleading statements; the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*;" or "when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Id.* (alteration in original) (quoting *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013)).

In this case, none of these circumstances is present. First, for the reasons already stated, there is no evidence that law enforcement included false statements in the affidavit, nor is there evidence that they omitted material information that would have precluded a finding of probable cause. Second, even if the nexus between drug activity

and Smith's apartment was thin, the affidavit was not so lacking in probable cause that reliance upon it would be "entirely unreasonable." As noted above, law enforcement had information that Defendant and Smith searched Bowers for a wire at Smith's apartment and that Defendant and Bowers smoked methamphetamine shortly after leaving Smith's apartment. Finally, the warrant was not so deficient that no reasonable officer could rely on it. Although it contained an incomplete address, the warrant, read together with the affidavit, identified the location and items to be searched. Because a reasonably well-trained officer could rely on the warrant, the second element of the good faith exception is met.

## CONCLUSION

For the reasons discussed, the F&R will be adopted, and the Motion to Suppress will be denied. No evidence demonstrates that the affidavit supporting the warrant contained deliberate falsehoods or material omissions. The affidavit supported the issuing judge's probable cause determination and, even if it did not, law enforcement acted in good faith reliance upon the issuance of the warrant. Accordingly,

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 71, are adopted;
2. The Motion to Suppress, filed by the Defendant Alfort Henry, ECF No. 36, is denied; and
3. The Objections to the Findings and Recommendation, ECF No. 72, are overruled.

Dated this 16th day of April, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge